26 C.C.P.A.(Patents)

## CHRISTIAN v. MULLER.

### Patent Appeal No. 4143.

Court of Customs and Patent Appeals.
June 15, 1939.

Clarence B. Des Jardins, of Washington, D. C. (George Ramsey, of New York City, and Church & Church, of Washington, D. C., of counsel), for appellant.

Davis, Lindsey, Smith & Shonts, of Chicago, Ill. (Leroy C. Shonts, of Chicago, Ill., and Charles M. Thomas, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an interference proceeding wherein the Board of Appeals of the United States Patent Office affirmed a decision of the Examiner of Interferences awarding priority of invention of the subject matter in issue to appellee.

The counts are numbered 1 to 15, inclusive, of which counts 1, 3, and 9 are illustrative and read as follows:

"1. In a machine of the class described, the combination of a shiftable traveling carriage; a rockable platen carrying frame supported thereby; means controlling the columnar positioning of said carriage; and means rendered effective by the carriage and functioning after the carriage is moved to a predetermined columnar position for rocking the platen carrying frame into a more accessible

position to facilitate the insertion and removal of material therein.

"3. A front-feed machine of the class described having a traveling paper carriage, a platen on said carriage, feed rolls cooperating with said platen to form a front-feed throat for receiving work sheets, said platen and feed rolls being mounted to enable a relative movement to occur between them to open and close said front-feed throat, power means operable in all the columnar positions of the carriage and independently of carriage travel for causing a relative movement between said platen and feed rolls to open said throat, said power means being normally in ineffective position, and means controlled by said carriage for rendering said power means effective in a predetermined columnar position of said carriage.

"9. A front-feed machine of the class described having a motor driven operating means adapted to give said machine cycles of operation, a printing mechanism, a traveling paper carriage, a platen on said carriage, means for holding a record sheet about said platen, front-feed means on said carriage for receiving and holding a front-fed work sheet in front-fed position relative to said platen, said front-feed means including portions forming a front-feed throat which portions are movable from closed to open throat position and vice versa, a front-feed paper chute on said carriage for guiding work sheets into said throat while it is open, throat opening means operable by power furnished by said motor driven operating means during a cycle of operation of said machine and independently of travel of said carriage for moving said front-feed means to open throat position, and means controlled by said traveling paper carriage for causing said power operated throat opening means to move said front-feed means to open throat position."

The interference arises between an application of appellant filed January 27, 1933, and an application filed by appellee on July 23, 1930.

The involved invention relates to calculating machines and especially to the carriage of front-feed type. The particular feature here involved is the separation of the feed rolls from the platen to form a front-feed throat to receive front-feed work sheets in certain columnar positions of the carriage.

Inasmuch as the preliminary statement of appellant alleged conception of the invention subsequent to the filing date of appellee, appellant was placed under an order to show cause why judgment on the record should not be entered against him. Within the motion period fixed by said order appellant moved to dissolve the interference upon the ground that appellee had no right to make claims corresponding to the counts involved in the interference.

Originally the interference contained twenty-one counts. Six of the counts were eliminated through dissolution of the interference as to them.

Of the counts before us, the Primary Examiner denied the motion to dissolve as to counts now numbered 5, 7, 9 and 10, and granted it as to the remaining counts. Upon appeal the Board of Appeals reversed the decision of the Primary Examiner with respect to counts 1 to 4, inclusive, and counts 6, 8, and 11 to 15, inclusive, as the counts are numbered before us. After said decision of the board the counts were renumbered.

Thereafter judgment upon the record was entered against appellant and priority of invention of the subject matter of the counts before us was awarded to appellee.

Upon appeal the Board of Appeals affirmed this decision of the Examiner of Interferences and appellant brings this action before us for review.

While the mechanism involved in the invention is very complicated, in view of the issues before us no extended description of the involved mechanism is necessary.

Counts 1 to 4, inclusive, and counts 6, 8, and 11 to 15, inclusive, contain the limitation in one form or another of the element in count 1 reading "and means rendered effective by the carriage and functioning after the carriage is moved to a predetermined columnar position for rocking the platen carrying frame into a more accessible position to facilitate the insertion and removal of material therein."

It appears from the record that in the prior art the front-feed throat could be automatically opened by the movement of the carriage, there being, however, but one power source, and the objective of both parties hereto concerned the improvement of providing a power means separate from the power means actuating the carriage,

but controlled by the carriage, for automatically opening the front-feed throat.

To accomplish this appellee provided an additional motor-actuated spring, the power of which is released by the movement of the carriage through means not necessary to describe.

Appellant, on the other hand, employs the power of an electric motor to open the front-feed throat in a direct manner without the use of a spring.

In so far as an independent source of power to open the front-feed throat is concerned, the disclosure of both parties is identical, but they accomplish the purpose in different ways.

In appellee's construction the carriage releases the power mechanism before the carriage has reached a predetermined columnar position, while in appellant's construction it is claimed by appellant that the power mechanism is not released until the carriage had become stationary in a predetermined columnar position.

The Board of Appeals held that in order for appellant's device to operate the carriage must move to effect the release of the power mechanism, and in fact might be moving at the time the motor-actuated part was effective.

We do not find it necessary to discuss this matter except to say that it seems to us that in appellant's structure the separate power means is not released by the carriage until the carriage has reached its predetermined columnar position, while in appellee's structure the release may be adjusted to take effect at any point between columnar positions.

However, appellee's specification states that the preferable adjustment of the mechanism is such that the power mechanism is released "just before" the carriage reaches the new columnar position. The specification states:

"The releasing of the latch by the paper carriage places no appreciable load on the carriage and such release may take place during a very small carriage movement, with the result that the control of the automatic throw-back mechanism by the paper carriage does not interfere in any way with the ordinary carriage movement and does not require any extended travel of the carriage in order that the necessary control may be obtained.

"It will be recalled that the carriage tabulates to a new columnar position at the end of a stroke of operation of the calculating machine. The studs 110 and 111 on the bail 80 which control the latch 100 are preferably positioned so that the latch is released *just prior* to the time the carriage engages the stop that arrests it in the columnar position to which it is moving. The sequence of operations is that, near the end of a stroke of operation of the machine, the carriage tabulates to a new columnar position and *just before* the carriage reaches this position the latch 100 is released whereupon the automatic throw-back mechanism operates to move the platen out of printing position so that the operator can remove the necessary papers and insert new ones." (Italics ours.)

It seems to us that in appellee's disclosure, if the latch is released just before the carriage is arrested in the columnar position, the power means for opening the front-feed throat will not become effective to any material extent until the carriage has come to a stop in its predetermined columnar position. The Board of Appeals noted the fact that there is no statement in the counts as to a timing related to stopping of the carriage in a predetermined columnar position. In other words the counts do not require that the carriage be stationary at the time the power mechanism for opening the front-feed throat is released so that it may begin to operate.

It is elementary that in interference proceedings counts must be given the broadest interpretation which they will reasonably permit, but express limitations can not be ignored. It is also well established that limitations will not be read into claims for the purpose of avoiding the issue of priority. Such limitations, to be binding, must appear in the count itself. Woelm v. Hasselquist, 62 F.2d 367, 20 C.C.P.A., Patents, 806.

So here, we may not read into the counts the limitation that the power mechanism for opening the front-feed throat does not begin to operate until after the carriage has become stationary in a predetermined columnar position.

The action of the carriage is very rapid and we think appellee discloses that the means for opening the front-feed

throat operates after the carriage is moved to a predetermined columnar position when we take into consideration that there is evidently some lag between the release of the latch and the rocking of the platen or, in other words, the opening of the front-feed throat.

We therefore hold that the element of the counts here under consideration, broadly interpreted, is supported by appellee's disclosure.

The next element to be considered is found in all of the counts except counts 1, 11, 12, and 15. The element is expressed in count 3 as follows: "* * * power means operable in all the columnar positions of the carriage and independently of carriage travel for causing a relative movement between said platen and feed rolls to open said throat, said power means being normally in ineffective position, * * *."

It is the contention of appellant that the means for rocking the platen carrying frame to front-feed position, automatically or under the control of the carriage, disclosed by appellee, is not operable independently of carriage travel.

We are of the opinion that the element above quoted refers to the capacity of the power means to move the front-feed throat without utilizing the power of carriage travel to accomplish that purpose. This is the major feature of the involved invention, and we think it is clearly expressed in the counts. It is clear that the power means referred to in the element above quoted, and there stated to be operable independently of carriage travel, is the power means which, once released, operates directly to open the front-feed throat mechanism. It does not embrace the means by which said throat-opening means is released; this latter means is covered by the provision in count 3 immediately following the element above quoted and reading: "and means controlled by said carriage for rendering said power means effective in a predetermined columnar position of said carriage." Obviously the means controlled by the carriage movement "for rendering said power means effective" is not embraced in the first quoted element; so to construe the count would result in the anomaly of having such means once described as "operable independently of carriage travel" and, immediately following, as being "controlled by said carriage."

The carriage travel has no effect whatever upon the operation of the power means referred to, other than to release it for independent operation as set forth in the counts. Upon this point the Board of Appeals stated: "The question of whether the power means of Muller is effective independently of carriage travel is raised. In Muller the carriage releases the power means for action but the power means is independent of the carriage travel as far as exerting power is concerned. In fact, a special key is provided to allow action of the power means when desired. The movement of the carriage does not necessarily cause movement of the spring-operated slide 84. In the Christian construction also the release of the catch 156 by the movement of the carriage does not control or effect operation of the power means. We consider broadly Muller has power means independent of the carriage travel for moving the front-feed means."

In our opinion this matter is so clear as to require no further comment.

Appellant contends that in appellee's disclosure the automatic rocking of the platen-carrying frame cannot take place during a cycle of operation, as called for by counts 8 to 12, inclusive. Upon this point the Board of Appeals in its decision upon the motion to dissolve said: "There is also a question as to the operation of Muller's slide 84, during a cycle of operation of the machine. Slide 84 can be effectively operated at the end of a carriage movement and we do not consider the term 'cycle of operation' should be so narrowly interpreted as to exclude such operation of the slide 84 even if spring 90 is tensioned at the end of a cycle of operation."

As observed by appellee's counsel, each of said counts refers to "a cycle of operation of said machine," and not to a cycle of operation of any of its parts.

We are in agreement with the board that appellee's disclosure supports the element of the counts referring to the "cycle of operation of said machine."

Appellant further contends that counts 8 to 11, inclusive, require direct action of the machine motor to open the front-feed throat, and that appellee cannot make these counts because the throat opening is, in his construction, accomplished by the energy of a spring, which spring is made effective by the motor to transmit energy.

That the front-feed throat opening means is operated indirectly by the motor in appellee's construction is clear. In each cycle of operation of the machine the motor tightens the spring, storing its energy for use in the next cycle of operation of the machine.

We find nothing in said counts requiring the front-feed throat opening means to be operated directly by the motor, and we are not at liberty to read the word "directly" before the word "operable" in said counts.

We are of the opinion that appellee's disclosure responds to the element of counts 8 to 11, inclusive, under consideration.

■■ Finally appellant contends that he should be awarded priority with respect to count 12 because it literally is not supported by appellee's disclosure. Upon this point the Board of Appeals stated: "Appellant raised a question as to count 12 because of an error in the printing of this count. The error is obvious as the count as it stands would not read on either party. The count may be corrected before the applications are passed to issue."

With respect to this appellant's counsel in their brief state: "Count 12 calls for means 'to thereby move the platen to printing position, to move the front-feed throat to open-throat position, and to move the paper chute from work-sheet-holding to work-sheet-receiving position.' It is indisputable that Muller does not disclose a construction in which the platen moves to printing position at the same time the front-feed throat moves to open-throat position, and the paper chute moves to work-sheet-receiving position. In Muller, the platen moves to feeding position, at the time the front-feed throat moves to open-throat position and the paper chute to work-sheet-receiving position. Muller concedes that this count will not read on his structure. On this point, the Board of Appeals said (Rec., p. 410): 'Appellant raised a question as to count 12 because of an error in the printing of this count. The error is obvious as the count as it stands would not read on either party.'

"This was not a printing error, but an error made by Muller in drafting the claim. See claim 147 (count 12) as it appears in Amendment D of the Muller application (Rec., p. 228).

"Since the claim obviously does not read upon the Muller application, Christian's motion to dissolve as to this count should have been granted, priority should not have been awarded to Muller, and the decision of the Board should be reversed and priority awarded Christian, as to count 12."

It is obvious that there is an error in the count in that the word "printing" should be "front-feed." As the count now reads it is not supported by either application. Appellant does not deny that the word "printing" instead of the words "front-feed" was an error, and we are clear that the count should be read in accordance with the clear intention of the parties in making the claims corresponding to this count.

Appellant in his motion to dissolve did not mention this error, and it does not seem to have been discovered until after appeal to the Board of Appeals from the award of priority made by the Examiner of Interferences.

We are entirely in accord with the view of the Board of Appeals that the error in count 12 is obvious, that it should be ignored in this proceeding, and that the error may be corrected before a patent is issued. If priority with respect to this count should be awarded to appellant instead of to appellee, it would be equally necessary to correct the error before a patent containing this count could be issued upon his application.

■■ Finally, we would observe that the Board of Appeals in its final decision upon the award of priority stated that appellant is attacking the language of the counts in a highly technical manner. This, of course, appellant has the right to do; and appellee, in order to succeed, must successfully meet technical objections. However, the object of an interference proceeding is to determine which of two or more parties is the first inventor of the subject matter in issue, and we are strongly of the opinion that appellee's disclosure supports the counts here involved.

There being no other issue involved in the appeal before us, the decision of the Board of Appeals is affirmed.

Affirmed.